# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 16-CR-00025 |
| | ) | |
| RICHARD A. BLAKE, JR. | ) | |
| | ) | The Honorable John J. Tharp, Jr. |

## UNITED STATES' SENTENCING MEMORANDUM

The United States requests that the Court: (1) accept the Sentencing Guidelines calculations recommended in the Presentence Investigative Report ("PSR"); (2) impose a term of probation; (3) impose a criminal fine of $411,291.09; (4) order the defendant to pay the special assessment of $100; and (5) not order restitution. The defendant is scheduled to be sentenced on July 15, 2021, at 9:00 a.m.

## I. FACTUAL BACKGROUND

### A. Industry Background and Overview of the Case

Heir location service providers identify heirs to estates of people who have died without a will and, in exchange for a contingency fee, develop evidence and prove-up the heirs' claims to an inheritance in probate court. The defendant entered into and engaged in a combination and conspiracy with Daniel Mannix, Kemp & Associates, Inc. ("K&A"), and others to suppress and eliminate competition by agreeing to allocate customers of heir location services sold in the United States. The combination and conspiracy engaged in by the defendant and his coconspirators was in unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). The conspiracy began at least as early as September 1999 and continued until at least January 29, 2014 (the "relevant period").

1

## B. Overview of the Conspiracy

During the relevant period, the defendant was sole owner, President, Secretary, and Treasurer of his Massachusetts-based company, Blake & Blake Genealogists, Inc. ("Blake & Blake"). The defendant and Blake & Blake were long time competitors with Mannix and K&A in the heir location services industry. Prior to the relevant period, the companies competed vigorously, often resulting in the companies undercutting each other's contingency fee rate offers to unsigned heirs, sometimes to unprofitable levels. As a result, heirs contracting with the companies at these lower contingency fee rates were able to retain a larger share of their inheritance after payment to the companies for their services.

During the relevant period, the defendant and Blake & Blake conspired with Mannix and K&A to allocate heir location services customers by agreeing to enter into estate-specific "fee-split agreements." The overarching conspiracy was reduced to an unsigned written document that became known as the "Guidelines," which memorialized and refined the terms of the collusive allocation agreement and the splitting of the conspiracy's fruits. Under the conspiracy's terms, the conspirators, rather than the competitive market, dictated with whom the heirs would contract and how much they would have to pay out of their rightful inheritances.

The conspiracy called for K&A and Blake & Blake to enter into estate-specific customer allocation and fee-split agreements on estates in which the conspirator companies otherwise were expected to compete to sign heirs. When either conspirator company contacted an heir that the other company had already contacted but who had yet to sign a contract with an heir location services provider, the second company ceased its efforts to sign the estate's heirs and notified the first conspirator company to initiate the fee-split agreement. The first conspirator company was allocated the initial unsigned heir's business as well as the business for the remaining unsigned

2

heirs on the estate. In exchange for not soliciting the allocated heirs, the second conspirator company received a payoff equal to a percentage of the contingency fees collected from the allocated heirs. As a result of the conspiracy, heirs affected by the agreement did not receive competing contingency fee offers from both companies, and the two companies were not forced to outbid one another for the affected heirs' business.

After distributions were made from the estate, the conspirators often submitted for each other's approval a breakdown of each conspirator company's take, inclusive of the payoff taken out of the affected contingency fees. Upon reaching a consensus on the amount due to each conspirator company, the company that had been allocated heirs issued a payoff check to the company that had agreed to stand down.

The conspirators stopped entering into new fee-split agreements in July 2008. But the conspirators continued to receive their contingency fee payments taken from distributions on estates that were subject to previous fee-split agreements, which they subsequently divvied up amongst themselves in accordance with those fee-split agreements' terms. Thus, the conspiracy continued beyond July 2008 and through the end of the relevant period.

## II. THE DEFENDANT'S CALCULATED GUIDELINES ARE UNDISPUTED

The parties and the U.S. Probation Office agree on all of the applicable Sentencing Guidelines calculations as set forth in the following table:

| Description | U.S.S.G. § | Points |
|---|---|---|
| Base Offense Level | 2R1.1(a) | 12 |
| Volume of Commerce attributable to the defendant: $1M - $10M (stipulated to be at least $3,671,121.30) | 2R1.1(b)(2)(A) | +2 |
| *Aggravating Factors* | | |
| Role in the Offense | 3B1.1(a) | +4 |
| *Downward Adjustments* | | |
| Acceptance of responsibility | 3E1.1(a) | -2 |
| Timely notification of intention to plead guilty | 3E1.1(b) | -1 |
| **Total Offense Level** | | **15** |
| **Guidelines Months of Imprisonment Range, Criminal History Category I** |  | **18-24 months** |
| **Individual Fine Range, 1-5% of Volume of Commerce, per 2R1.1(c)** |  | **$36,711.21 - $183,556.07** |

Moreover, in recognition of the United States' agreement not to charge the Blake & Blake corporate entity, the parties have agreed to recommend jointly that the defendant be fined an amount equal to a fine to which Blake & Blake would have been subject had it pleaded guilty. Plea Agreement ¶ 10. The parties further stipulate that based on the unique characteristics of the charged conspiracy, had Blake & Blake pleaded guilty, the appropriate corporate Guidelines fine, *prior* to any adjustment based on the defendant's provision of cooperation in the United States' investigation and prosecution of others for violations of federal antitrust and related criminal laws involving the sale of heir location services in the United States, would have been $685,485.16. Id.

Although the defendant's criminal fine range is still subject to § 2R1.1(c), as determined above, the following table explains Blake & Blake's would-be fine had it been charged:

| Description | U.S.S.G. § | Sentencing Calculation |
|---|---|---|
| Volume of Commerce | 2R1.1(b) | Stipulated to be at least $3,671,121.30 |
| Corporate Base Fine | 8C2.4(a)–(b) applying 2R1.1(d)(1) | $734,224.26 |
| Base Culpability Score | 8C2.5(a) | 5 |
| Less than 10 employees | 8C2.5(b) | 0 |
| Clear Acceptance of Responsibility and Provision of Cooperation in the Investigation | 8C2.5(g)(2) | -2 |
| Total Culpability Score | | 3 |
| Multipliers | 8C2.6 | 0.75-1.2[1] |
| **Corporate Guidelines Fine Range, applying Multipliers to Volume of Commerce** | | **$550,668.20 - $881,069.11** |
| Stipulated Amount Within Corporate Guidelines Fine Range Prior to Application of Cooperation Credit for Defendant's Substantial Assistance | | $685,485.16 |

To the extent that the defendant's ultimate criminal fine, if any, exceeds the defendant's individual fine range of $36,711.21 - $183,556.07, the parties agree that an upward departure under U.S.S.G. §§ 5K2.0(a)(1)-(2)(A) and 5K2.21 is appropriate. Plea Agreement ¶ 10(a).

### III. THE DEFENDANT'S SUBSTANTIAL ASSISTANCE IN THE INVESTIGATION AND PROSECUTION OF OTHERS QUALIFIES FOR A 40% DEPARTURE FROM THE BOTTOM OF THE GUIDELINES IMPRISONMENT RANGE

At sentencing, the United States anticipates that it will move the Court pursuant to U.S.S.G. § 5K1.1 to depart 40% from the bottom of the applicable Guidelines imprisonment range. Applying the recommended departure, before consideration of the factors in 18 U.S.C. § 3553(a), results in a potential incarceration term of 10.8 months.

Reductions under § 5K1.1 are assessed based on, among other things: (1) the significance and usefulness of the defendant's assistance; (2) the truthfulness, completeness, and reliability of

---

[1] U.S.S.G. § 2R1.1(d)(2) states that the minimum and maximum multipliers shall not be less than 0.75.

any information or testimony provided by the defendant; (3) the nature and extent of the defendant's assistance; and (4) the timeliness of defendant's assistance. See U.S.S.G. § 5K1.1(a). These factors weigh in favor of the departure requested here.

The defendant's cooperation since he first became aware of the United States' investigation in January 2014 was significant, consistent, and timely over the course of six years—an exceptional amount of time—and it substantially assisted United States' investigation into and prosecution of his conduct and that of others in the heir location services industry.

### A. The Defendant's Assistance Against Coconspirators Mannix and Kemp & Associates

The defendant was the United States' most significant cooperator in the investigation and prosecution of coconspirators Mannix and K&A. The defendant's cooperation began immediately when he was fully forthcoming about his involvement in the charged conspiracy to investigators who approached him in January 2014. He subsequently provided the United States with significant insight into the conspiracy's origins, mechanics, and evolution over the course of its lifespan.

The defendant was consistently thorough and prompt in response to the United States' numerous requests in furtherance of the investigation, whether it be via targeted document productions, attorney proffers from his counsel, or his own testimony. Some of the requests involved expedited timelines, and the defendant consistently made concerted efforts to satisfy these timelines.

The defendant's cooperation also assisted the United States' understanding of the scope of the conspiracy's harmful effects. To the extent that the information was ascertainable, the defendant provided detailed information regarding the number of estates affected by the charged conspiracy, the terms of the illegal agreement as it applied to each estate, and the affected

commerce. The defendant's efforts in providing this information went well beyond mere subpoena compliance. At considerable expense and effort, the defendant directed his counsel to review thousands of pages of estate documents to distill the pertinent facts of each affected estate to assist the United States understand the specific implementation of the conspiracy, identify victims (the heirs to the estates), and to calculate the affected volume of commerce for his own case and those of Mannix and K&A. As explained below, these efforts also assisted the United States' attempt to determine the feasibility of seeking restitution. The defendant's assistance ultimately saved the United States hundreds of hours of work, time that was able to be allocated elsewhere.

The United States charged Mannix and K&A in the District of Utah in August 2016 for their participation in the K&A-Blake & Blake conspiracy,[2] and the United States anticipated calling the defendant as its primary witness in its case-in-chief against Mannix and K&A. At his own expense, the defendant traveled from Massachusetts to Chicago to meet with prosecutors in preparation to be called to the stand at trial. Mannix and K&A eventually agreed to plead guilty, and the defendant's trial testimony was no longer necessary. Although the defendant ultimately was not called to testify at Mannix's and K&A's sentencing hearing in January 2020, he again made himself available and traveled to Chicago in preparation for his potential testimony as the United States' sole non-government fact witness regarding sentencing issues still in dispute.

Moreover, the United States also notes that the defendant provided substantial assistance in the investigation of other uncharged conduct involving Mannix, which ultimately led to the

---

[2] USA v. Kemp & Associates et al., Case No. 2:16-cr-00403 (D. Utah).

inclusion of additional affected commerce into Mannix's Sentencing Guidelines calculations under § 1B1.3's relevant conduct provision.[3]

### B. The Defendant's Assistance Regarding Other Conduct

The defendant also assisted the United States by providing information about other potentially criminal conduct in the heir location services industry. For example, the defendant provided corroborating information relevant to the United States' investigation into a separate customer allocation conspiracy involving Bradley N. Davis and his employer, Brandenburger & Davis ("B&D").[4] Davis and B&D both pleaded guilty for their roles in that conspiracy and were sentenced in September 2020 in the Northern District of Illinois before Judge Matthew F. Kennelly.[5]

The defendant also provided information about other potentially criminal conduct, and although no additional charges resulted from this information, the defendant's assistance enabled the United States to gain a more complete understanding of the industry and the relationships of its various participants and corroborated details that the United States found elsewhere.

### C. The Defendant's Assistance Regarding Potential Restitution

Although restitution is discretionary for 15 U.S.C. § 1 violations, the defendant made a substantial and good-faith effort to provide relevant information for the United States' independent attempt to determine the feasibility of pursuing restitution for the victims of not only the K&A-

---

[3] Mannix was sentenced to one year of probation, a $77,595.93 criminal fine, a $100 special assessment, and no restitution. K&A was sentenced to pay a fine of approximately $1.5 million, a $400 special assessment, no restitution, and no period of probation.

[4] See USA v. Brandenburger and Davis et al, Case No. 1:15-cr-00752 (N.D. Ill.)

[5] Davis was sentenced to two years probation, 100 hours of community service, a $50,000 fine, a $100 special assessment, and no restitution. B&D was sentenced to pay a fine of $890,000, a $400 special assessment, no restitution, and no period of probation.

Blake & Blake conspiracy but also for victims of the separately charged conspiracy involving B&D and Bradley Davis. Again, the defendant's responses to the United States' requests in this regard were fulsome and timely. The United States ultimately determined that appropriate restitution amounts could not be ascertained from the available data. Accordingly, the plea agreement in this case provides that the parties agree to recommend that the defendant's sentence not include an order of restitution.

### D. In Conclusion, a 40% Substantial Assistance Departure from the Defendant's Guidelines Incarceration Range is Warranted

The defendant's substantial assistance justifies a § 5K1.1. departure of 40% from the bottom of his Guidelines incarceration range. Moreover, as noted below, the United States' recommendation for a term of probation accounts for the defendant's significant, consistent, and timely cooperation over the course of six years as a point of comparison against the other individuals charged in the United States' investigation, which is a relevant consideration under 18 U.S.C. 3553(a).

### IV. THE DEFENDANT'S SUBSTANTIAL ASSISTANCE IN THE INVESTIGATION AND PROSECUTION OF OTHERS QUALIFIES FOR A 40% REDUCTION AS APPLIED TO HIS POTENTIAL CRIMINAL FINE

For the reasons outlined above, the United States believes that a 40% reduction applied to the stipulated starting point ($685,485.16) within the *corporate* Guidelines fine range to be used for the defendant is appropriate and results in a criminal fine of $411,291.09. Accordingly, to reach this amount, the United States anticipates moving the Court for an upward departure of $227,724.93 from the top of the defendant's *individual* Guidelines fine range.

### V. SENTENCING RECOMMENDATION

### A. A Sentence of a Term of Probation and a $411,291.09 Criminal Fine is Appropriate in this Case

The United States recommends that the defendant be ordered to serve a term of probation and pay a criminal fine of $411,291.09, a sentence that is sufficient, but not greater than necessary, to comply with the principles set forth in 18 U.S.C. § 3553(a). This recommendation appropriately considers the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, the need to promote respect for the law, the need to provide just punishment for the offense, and the need to afford adequate deterrence, while balancing the equities of these factors against the need to avoid unwarranted sentence disparities.

### B. The Nature and Circumstances of the Offense, the History and Characteristics of the Defendant

The defendant's crime was a serious one. For over 14 years, the defendant conspired with Mannix, K&A, and others to allocate customers for heir location services—resulting in over 800 victims being denied the benefits of competition that the free market otherwise would have provided. Furthermore, there does not appear to be any unusual hardships occurring in the defendant's life at the time of his offense that might serve as a mitigating factor. Based on the information that the defendant submitted to Probation, he appears to have enjoyed a relatively normal childhood and young adulthood, obtained a college education, and had a history of stable employment. While the United States' recommendation considers these factors, there are other factors that militate in favor of a term of probation rather than incarceration.

### C. A Sentence of Probation Avoids Unwarranted Sentencing Disparities

The United States' recommendation for a term of probation appropriately addresses the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). Here, the disparity between any sentence of

incarceration imposed on the defendant and the probation sentences imposed on the only other individual defendants in the United States' investigation is significant – not least of which because Daniel Mannix (the defendant's uncooperative coconspirator) and Bradley Davis engaged in conduct that was more egregious and that warranted even greater penalties than the defendant should receive.

1. <u>Coconspirator Daniel Mannix's Probationary Sentence Creates a Potentially Significant Sentencing Disparity</u>

Mannix's sentence of one-year probation is of particular significance in evaluating the potential for sentencing disparity regarding the defendant. Mannix chose very early on not to cooperate with the United States' investigation. The United States indicted Mannix in the District of Utah in August 2016. The indictment began an extensive, time-consuming, and litigious journey first through the district court, then the Tenth Circuit Court of Appeals, and finally back to the district court where Mannix ultimately pleaded guilty in July 2019. Mannix was more culpable than the defendant because the charged conspiracy directly resulted from Mannix reaching out to the defendant to propose an agreement to end the intense competition between his and the defendant's companies. <u>See</u> PSR ¶ 8. Nonetheless Mannix disputed the application of a leader/organizer role enhancement urged by the United States in his case while the defendant did not. The district court in Utah ultimately found that Mannix was indeed a leader/organizer subject to the four-level Guidelines enhancement under § 3B1.1. Additionally, Mannix's Guidelines calculations also included the application of § 1B1.3's relevant conduct provision, which accounted for additional commerce affected by Mannix's involvement in uncharged conduct separate and distinct from his participation in the conspiracy with the defendant. The additional commerce contributed to a total volume of commerce attributable to Mannix of at least $7,759,593.

His court-calculated Guidelines range was 18-24 months imprisonment, and the United States argued for a sentence of 21 months imprisonment.

It was certainly Mannix's right to decline to cooperate with the United States' investigation and to contest the charge against him as well as his significant role in the offense. Those choices stand in stark contrast, however, with the defendant's consistent acceptance of responsibility and sustained cooperation over the course of six years that began when he first learned of the United States' investigation. Additionally, unlike Mannix, the defendant did not engage in uncharged conduct that required application of § 1B1.3.

2. <u>Bradley Davis' Probationary Sentence Creates a Potentially Significant Sentencing Disparity</u>

Davis faced a court-calculated Guidelines range of 15-21 months incarceration prior to the application of U.S.S.G. § 5K1.1, and the United States ultimately recommended a sentence that included 10.75 months' incarceration. Yet Davis was sentenced by Judge Kennelly to serve only a two-year term of probation. As with Mannix's sentence, this also represents a potentially significant disparity as compared to the defendant's possible sentence. Like the defendant, Davis cooperated with the United States' investigation early on, though not as quickly as the defendant. The United States moved for a U.S.S.G. § 5K1.1 departure of 28% off the bottom of Davis' calculated Guidelines imprisonment range as compared to the 40% that the United States requests in the defendant's case, which evidences the meaningful difference in the United States' valuation of each party's assistance. Like Mannix, Davis also disputed the United States' recommended leadership enhancement. And like Mannix (but not the defendant), Davis' Guidelines calculation included the application of U.S.S.G § 1B1.3 to account for relevant conduct other than the conspiracy for which he was charged, which resulted in a total volume of commerce of at least $8,607,223.

Thus, there are significant differences in conduct, both before and after the United States' investigation came to light, between Mannix and Davis on the one hand and the defendant on the other, that would have justified Mannix and Davis receiving a more significant sentence than the defendant—yet neither were incarcerated and both received probation.

3. The National Context of the Sentencings Justifies Particular Concern for Unwarranted Sentencing Disparities

Finally, this is not a case in which a single judge will have sentenced multiple defendants with complete knowledge of the record as to all of them so as to fully account for sentencing disparities that appear to otherwise exist between them. Rather here, three separate judges in two different jurisdictions will have sentenced three individual defendants. The multi-judge and multi-jurisdictional nature of these sentencings dramatically raises the risk for potentially unwarranted sentencing disparities between them. See, e.g., United States v. Boscarino, 437 F.3d 634, 638 (7th Cir. 2006) ("[T]he kind of 'disparity' with which § 3553(a)(6) is concerned is an unjustified difference across judges (or districts) rather than among defendants to a single case."); United States v. Rivera-Gonzalez, 626 F.3d 639, 648 (1st Cir. 2010) (noting the 18 U.S.C. 3553(a)(6) provision is primarily aimed at national disparities). A sentence for the defendant that imposes a term of probation rather than incarceration is an appropriate and just outcome and avoids unwarranted sentence disparities.

**D. Other U.S.C. § 3553(a) Factors Support the Recommended Sentence**

The recommended sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense while also accounting for the defendant's guilty plea. It appropriately considers the scope and impact of the defendant's criminal conduct as well as recognizes the totality of facts relevant to his specific case, which include circumstances that have evolved over the course of the six years since investigators first approached him.

Accordingly, the United States submits that its recommendation for a term of probation is a just and appropriate result in this case.

### E. The U.S.C. § 3553(a) Factors Support the Recommended Corporate-Equivalent Fine

The parties agreed in the defendant's plea agreement that the defendant would receive the equivalent of Blake & Blake's fine in return for the entity not being charged. Both Mannix's and Davis' respective companies were charged and paid significant financial penalties, and so the concern of unwarranted disparities does not exist as to a fine that would otherwise be imposed on Blake & Blake had the entity been charged here.

Furthermore, the recommended fine is a significant upward departure from the top of the defendant's calculated individual Guidelines fine range. Thus, potential antitrust offenders would be well-advised to take note of these proceedings before risking, with no guarantee of outcome, going down the path on which the defendant finds himself.

### F. Restitution is Discretionary and Not Recommended

Under 18 U.S.C. § 3663(a)(1)(A), restitution is discretionary for this offense, and the parties have agreed not to recommend that the defendant's sentence include an order of restitution. PSR ¶ 101. As noted in III.C., above, despite the United States' best efforts, and with considerable assistance from the defendant, the United States was unable to determine an appropriate restitution amount from the available data.

## VI. CLARIFICATION TO THE PSR REGARDING THE DEFENDANT'S POTENTIAL CRIMINAL FINE

The PSR correctly states that the parties have agreed to recommend jointly that the defendant be fined an amount equal to a fine to which Blake & Blake would have been subject had it pleaded guilty. PSR ¶ 99. The United States wishes to clarify that the $685,485.16 figure is the amount of the applicable fine *prior* to any adjustment crediting the defendant for his substantial

14

assistance in the investigation and prosecution of others. As described above, applying the 40% cooperation credit to the $685,485.16 "starting point" results in the criminal fine of $411,291.09 recommended by the United States.

## VII. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court: (1) accept the Sentencing Guidelines calculations recommended in the PSR; (2) impose a term of probation; (3) impose a criminal fine of $411,291.09 to be paid in full within 15 days of the judgment; (4) order the defendant to pay the special assessment of $100; and (5) not order restitution.

Respectfully submitted,

By: _____
ROBERT M. JACOBS, IL Bar No. 6289819
(Robert.Jacobs@usdoj.gov)
RUBEN MARTINEZ, JR., TX Bar No. 24052278
(Ruben.Martinez@usdoj.gov)

Trial Attorneys
Antitrust Division
U.S. Department of Justice
209 S. LaSalle St., Ste. 600
Chicago, Illinois 60604
Tel: (312) 984-7200

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2021, I caused a copy of the foregoing to be served in accordance with Local Rule 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

Respectfully submitted,

_____
Robert Jacobs
robert.jacobs@usdoj.gov

Attorney
U.S. Department of Justice
Antitrust Division
209 South LaSalle St., Ste. 600
Chicago, Illinois 60604
Tel: (312) 984-7200